UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS MAYSONET,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :   Case No. 3:22-CV-1483 (OAW) |
| GONZALES et al.,<br>    *Defendants*. | :<br>:<br>: |

### INITIAL REVIEW ORDER

The self-represented plaintiff, Thomas Maysonet ("Mr. Maysonet" or "Plaintiff"), currently incarcerated at Osborn Correctional Institution, has filed a complaint pursuant 42 U.S.C. § 1983, against Correctional Transportation Unit Officer Gonzales ("Officer Gonzales") and Lieutenant Jarzabek ("Lt. Jarzabek") (collectively "Defendants"). Plaintiff alleges that Defendants were deliberately indifferent to his safety in connection with a motor vehicle accident and violated his First Amendment right to make a complaint to police. He seeks damages from the defendants in their individual capacities. For the reasons that follow, the Complaint is **DISMISSED** without prejudice, for failure exhaust available administrative remedies.

### I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are

1

not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to self-represented litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau*

of Prisons, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.'" (internal citations omitted)).  This liberal approach, however, does not exempt self-represented litigants from the minimum pleading requirements described above: such a litigant still must "'state a claim to relief that is plausible on its face.'"  *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678).  Therefore, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the court may not "invent factual allegations" that the plaintiff has not pled.  *Id*.

## II.   BACKGROUND

On January 30, 2020, Mr. Maysonet, a pretrial detainee, was in a transport van driven by Officer Gonzales.  ECF No. 1 at ¶¶ 2-3, 17.  Plaintiff was wearing shackles connected by a tether chain to his waist.  *Id.* ¶ 18.  A black box covering his handcuffs also was connected to the chain around his waist.  *Id.*

Officer Gonzales was driving on Whalley Avenue in New Haven.  *Id.* ¶ 2.  Whalley Avenue is a city street with two lanes of traffic in each direction.  *Id.* ¶ 3.  Officer Gonzales was driving in the left lane.  *Id.* ¶ 5.  He made an improper right-hand turn without signaling, causing the driver in the right lane to "clip" the rear of the transport van.  *Id.* ¶¶

6-7.  Because of the restraints, Plaintiff was unable to brace himself for the impact.  *Id.* ¶ 19.  Immediately after the accident, Plaintiff experienced neck pain, lower back pain, lower right side flank pain, and headache.  *Id.* ¶ 21.

Plaintiff told Officer Gonzales he was injured and needed medical attention.  *Id.* ¶ 12.  However, Officer Gonzales told the responding police officer that no inmate passenger was injured.  *Id.*  Before Plaintiff asked Officer Gonzales to speak to the responding police officer, Lt. Jarzabek arrived at the scene.  *Id.* ¶ 15.  Although Plaintiff told Lt. Jarzabek that he was injured and needed medical attention, Lt. Jarzabek stood by silently when Officer Gonzales told the police officer that no one was injured.  *Id.*

Mr. Maysonet then "began yelling for the responding officer."  *Id.*  Officer Gonzales told Plaintiff that, if he continued to yell to the officer on the scene, Officer Gonzales would issue Plaintiff a disciplinary report for interfering with safety and security, a charge that could subject Plaintiff to placement in restrictive housing.  *Id.* ¶ 13.  Plaintiff remained silent for the remaining time he was in the transport vehicle.  *Id.* ¶ 14.

Officer Gonzales continued to drive erratically en route to Corrigan-Radgowski Correctional Center, causing Plaintiff to "slam . . . into the seat" and be "propel[led] forward into the partition."  *Id.* ¶ 25.  At no time, before or after the accident, was Plaintiff offered a seat belt.  *Id.* ¶ 26.

The accident occurred about 7:00 p.m.  *Id.* ¶ 20.  Plaintiff did not receive medical attention until he arrived at Corrigan-Radgowski Correctional Center at about 9:40 p.m.  *Id.* ¶¶ 20, 23.  Plaintiff alleges that medical staff told him he should have been seen immediately after the accident.  *Id.* ¶ 24.

Plaintiff filed a Level 1 Grievance on February 28, 2020. *Id.* ¶ 28. He did not receive a grievance receipt or any response to his inquiries about the grievance. *Id.*

### III. DISCUSSION

Mr. Maysonet asserts claims for violation of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and Article first, sections 4, 5, and 9 of the Connecticut Constitution. ECF No. 1 at 1. His federal claims are based on Defendants' alleged deliberate indifference to his health and safety and denial of the ability to report his injuries to the police. *Id.* Plaintiff also includes allegations regarding his exhaustion of administrative remedies. *Id.* at 8.

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548

5

U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96, *see also Jones*, 549 U.S. at 211.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross v. Blake*, 578 U.S. 632, 642 (2016). More specifically, Section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 578 U.S. at 642 ("the exhaustion requirement hinges on the availability of administrative remedies") (internal quotation marks and brackets omitted). In the PLRA context, the Supreme Court has determined that "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at 642 (internal quotation marks and citation omitted). The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In *Williams v. Priatno*, the Second Circuit noted "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]"  829 F.3d 118, 123 n.2 (2d Cir. 2016).  The Court, however, is guided by these illustrations of unavailability.  *See Mena v. City of New York*, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6 and may be found at portal.ct.gov/DOC/AD/AD-Chapter-9.[1]  For all matters relating to any aspect of a prisoner's confinement (including claims addressed to conditions of confinement) that are subject to the Commissioner's authority (and that are not specifically identified in Sections 7 through 10 of Directive 9.6), the applicable remedy is the Inmate Administrative Remedy Procedure.

The procedure involves an informal resolution attempt, a grievance, and a grievance appeal.  Each step includes time for the prison official to respond—fifteen business days for the informal resolution attempt, and thirty days for the grievance and grievance appeal.  *See* Dir. 9.6(6).  The steps also include direction for proceeding to the next step if a response is not received.  For example, if the inmate does not receive a timely response to his grievance, he may file a grievance appeal.  *See* Dir. 9.6(6)(b)(i)(4)(a).

Exhaustion of administrative remedies is an affirmative defense on which the defendants bear the burden of proof.  *See Jones*, 549 U.S. at 216.  However, the district

---

[1] The version of Directive 9.6 available on the Department of Correction website is effective April 30, 2021, and supersedes the version effective August 13, 2013.  This provision, however, was included in the prior version of the directive.  *See Otero v. Purdy*, 2021 WL 4263363, at *6 (D. Conn. Sept. 20, 2021) (explaining provisions of Directive 9.6 effective in July 2019).

court may dismiss a complaint for failure to exhaust administrative remedies where that failure appears on the face of the complaint.  *See id*. at 214-15 (recognizing that complaint may be dismissed sua sponte "'when an affirmative defense ... appears on its face'") (quoting *Leveto v. Lapina,* 258 F.3d 156, 161 (C.A.3 2001)); *see Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("inmates are not required to specifically plead or demonstrate exhaustion in their complaints," but noting that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (quoting *Jones*, 549 U.S. at 215, 216).

Mr. Maysonet alleges that he submitted his Level 1 Grievance on February 28, 2020, twenty-nine days after the accident.  He contends that he did not receive a receipt and his inquiries about the status of his grievance went unanswered.  Doc. No. 1 ¶ 28.  Plaintiff contends that, because correctional staff did not follow the grievance procedures and provide him a receipt, he has exhausted his administrative remedies.  *Id*. ¶ 30.  Plaintiff is mistaken.  The directive specifically provides for the situation when a timely response to a Level 1 Grievance is not received.  Plaintiff could have filed a Level 2 Grievance Appeal, *see* Dir. 9.6(6)(b)(i)(4)(a), but failed to do so.  To properly exhaust his administrative remedies, Plaintiff is required to use all steps set forth in the administrative remedy process and do so properly.  *See Jones*, 549 U.S. at 218.  Mr. Maysonet did not use all available steps and, therefore, has not properly exhausted his administrative remedies.  Accordingly, the Complaint hereby is **DISMISSED.**

## **CONCLUSION**

The Complaint is **DISMISSED** without prejudice for failure to exhaust administrative remedies. The Clerk of Court hereby is directed to close this case, please.

**IT IS SO ORDERED** at Hartford, Connecticut, this 1st day of December, 2023.

/s/
Omar A. Williams
United States District Judge